J-S41016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADRIEN JACKIE ROBINSON | : | |
| | : | |
| Appellant | : | No. 83 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 10, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007286-2017

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 09, 2019**

Adrien Jackie Robinson (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of strangulation, simple assault, terroristic threats, and intimidation of a witness.[1]  Appellant challenges the denial of his request during trial to dismiss one count of intimidation of a witness; the weight of the evidence presented in support of his strangulation and terroristic threats convictions; and the denial of his motion to sever charges.  Upon review, we affirm.

This case arises from Appellant's physical assault of his wife, Louisa Robinson (Wife), and subsequent telephone calls Appellant made to Wife while

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1), 2706(a)(1), 4952(a)(1), (3).

he was in prison.

The trial court summarized Wife's trial testimony:

On September 30th, 2017, [Wife] got into an argument with [Appellant], with whom she resided. While in the bedroom of their residence, [Appellant] got angry with [Wife], accusing her of talking to another man. This argument in the bedroom never escalated beyond loud yelling. The two moved to the kitchen at which point the argument turned physical.

During their interaction in the kitchen, [Appellant] was repeatedly pushing [Wife], all while yelling at her. [Appellant] then put his hands on [Wife's] neck and choked her. With his hands around her throat, [Appellant] applied pressure and choked [Wife]. [Appellant] choked her with his right hand wrapped around her throat while pushing her back into the sink. [Wife] testified that while [Appellant] had his hand around her neck, she felt like she could not breathe, and that this lasted for about a minute. She also testified that while [Appellant] was choking [her], he said he was going to kill her.

[Wife] eventually left the residence and went outside, where [Appellant] followed her and slapped her across the face with an open hand. [Wife] got into her car and drove around the block to get away from [Appellant]. When she got back to the house, [Appellant] came up to her vehicle, reached through the open window and opened the door, pulled [Wife] out of the car, then got inside the vehicle and drove off. After this, [Wife] encountered the police who had been called to her residence by a neighbor, and told them [Appellant] had taken her vehicle and had slapped her. The police told her to go back into her home and went to find [Appellant] and returned a few times to the residence before taking [Appellant] into custody there. [Wife] stated that as a result of her injuries, she had redness on her face and neck, and pain in her throat, head and chest from pressure being applied.

Trial Court Opinion, 4/30/19, at 4-5 (citations to notes of testimony and footnote omitted).

York City Police Officer Matthew Tunall responded to the reports of the domestic incident that night. The trial court stated:

Officer Tunall testified that on September 30th, 2017, he was dispatched at 11:07 PM to [Appellant and Wife's residence] for a domestic incident call. Within five minutes of arriving, the officers made contact with [Wife], who appeared to be upset, fearful and concerned. [Appellant] was not present[.] Officer Tunall took information from [Wife] that a domestic disturbance had occurred, gave her some information, and left the residence. Officer Tunall was dispatched to [the residence] again that night at 11:51 P.M. Officer Tunall was dispatched again because the police had received a call that [Appellant] had returned to the residence. The police searched the residence upon arrival for [Appellant], but once again he was not located.

Officer Tunall was dispatched a third time to the residence that night at 12:42 A.M. Again, the officers were told [Appellant] had returned to the residence, and again he was not present when they arrived. Instead of leaving the scene this time, Officer Tunall set up a vantage point of the residence and waited for [Appellant] to return, which he subsequently did. Officer Tunall and other police officers entered the residence to contact [Appellant], but could not find him inside, until Officer Tunall located [Appellant] on the roof of the home. After [Appellant] was located, he was taken into custody.

Trial Court Opinion, 4/30/19, at 3.

Appellant was detained at the York County Prison. That evening, on October 1, 2017 — less than 24 hours after his arrest — Appellant telephoned Wife twice from the prison, at 8:11 and 8:32 p.m. N.T. Trial, 9/11/18, at 240, 243. The following afternoon, October 2nd, Appellant called Wife four more times. These calls were recorded and played at trial. The trial court recounted:

On the first call[, Appellant], expressed his anger that [Wife] called the cops on him and was going to testify against him, and stated to her that she was "playing a dangerous game." [Wife testified] that [Appellant] made her use aliases to refer [to] herself since the calls were being recorded, and he would use the third person when referring to her. The recordings of the phone

- 3 -

calls were played in open court, and the Commonwealth admitted into evidence transcripts of what was recorded. Among the various statements [Appellant] made to [Wife] were, "if she does go through with it, I am going to make her life a living hell[,]" and, "I don't give a fuck where you go in the United States, bitch, I'm on your ass[,]" and further, that he was going to "make her pay." [Appellant] also repeatedly told [Wife] to "make it right" and "fix the situation[,]" and further instructed her that, "I need you to go down there and probably like holler at the DA or something, man. Like take her down there, let them know like they persuaded her[.]"

Trial Court Opinion, 4/30/19, at 5-6.

Appellant was charged with strangulation, simple assault, and terroristic threats. On April 23, 2018, the Commonwealth amended the information, upon motion, to add two counts of intimidation of a witness — under 18 Pa.C.S.A. § 4952(a)(1) (refrain from reporting) and (a)(3) (withhold testimony) — based on the prison telephone calls. Thereafter, Appellant filed a motion to sever the latter charges of intimidation of a witness from the former charges of strangulation, simple assault and terroristic threats. The trial court denied the motion.

The case proceeded to trial on September 11, 2018. The Commonwealth presented the testimony of Wife and Officer Tunall. The Commonwealth also called Preston Eger, an inmate, who testified he: (1) observed Appellant on the phone at the prison talking about his case, where Appellant appeared to be in an aggressive, agitated state, telling the other person on the line that they were "playing a dangerous game"; and (2) overheard Appellant telling another person that he put his hands on his wife,

- 4 -

that he was upset she was going to testify against him, and he was going to try to keep her from doing so. **See** Trial Court Opinion, 4/30/19, at 2, *citing* N.T. Trial, 9/11/18, at 157-158, 160-161.

Following the Commonwealth's case in chief, Appellant demurred to the charge of intimidation of a witness—refrain from reporting, and moved for dismissal. N.T. Trial, 9/11/18, at 309-310. The trial court denied the request. *Id.* at 326.

Appellant then called York City Police Officer Joseph Colahan to testify. Officer Colahan, like Officer Tunall, responded to reports of the domestic incident at Appellant's residence on September 30, 2017. N.T. Trial, 9/11/18, at 347. Officer Colahan testified that Wife told him Appellant stole her car when she returned home to get a spare house and car keys. *Id.* at 348.

As noted, the jury found Appellant guilty of strangulation, simple assault, terroristic threats, and two counts of intimidation of a witness. On December 10, 2018, the trial court sentenced Appellant to an aggregate term of 10 to 20 years of imprisonment.[2]

Appellant did not file a post-sentence motion, but filed this timely appeal. Both the trial court and Appellant have complied with Pennsylvania

---

[2] The individual sentences were: (1) 2½ to 5 years for strangulation; (2) a concurrent 1 to 2 years for simple assault; (3) a consecutive 2½ to 5 years for terroristic threats; (4) a consecutive 5 to 10 years for intimidation of a witness—refrain from reporting; and (5) a concurrent 5 to 10 years for intimidation of a witness—withhold testimony.

Rule of Appellate Procedure 1925.

Appellant presents three issues for our review:[3]

1. Did the Trial Court err by refusing to grant Appellant's Motion to Dismiss Count 6, where the evidence was insufficient to convict Appellant of Intimidation of witnesses/victim?

2. Did the Trial Court err by holding that the verdict is not against the weight of the evidence as to Strangulation and Terroristic threats?

3. Did the Trial Court err by denying Appellant's motion to sever the original charges from the subsequent charges, which resulted in prejudice to Appellant?

Appellant's Brief at 5.

Appellant argues the trial court erred in "denying a demurrer and permitting" the charge of intimidation of a witness—refrain from reporting, to go to the jury. Appellant's Brief at 25. Appellant underscores that he made the telephone calls to Wife **after** she had already informed law enforcement of the alleged assault and Appellant was arrested for the assault. *Id.* at 26. This issue is waived.

"[W]hen a defendant does not rest following denial of a demurrer, but instead presents a defense, the correctness of the ruling on the demurrer is not preserved for appellate review; the proper procedure is to challenge the sufficiency of the evidence." *Commonwealth v. Johnson*, 192 A.3d 1149, 1154 (Pa. Super. 2018) (citation omitted); *see also* Pa.R.Crim.P. 606(A)(1)

_____

[3] We have reordered Appellant's issues.

("A defendant may challenge **the sufficiency of the evidence** to sustain a conviction of one or more of the offenses charged in . . . a motion for judgment of acquittal at the close of the Commonwealth's case in chief.") (emphasis added).

The trial court accurately observed that Appellant, in his Rule 1925(b) statement, averred that he "was improperly charged with two counts of Intimidation of Witnesses or Victims. Count 6 should have been dismissed, **as was requested in [Appellant's] Motion *in limine*.**" ***See*** Trial Court Opinion, 4/30/19, at 9; Appellant's Statement of Matters Complained of on Appeal, 1/18/19, at 1-2 (emphasis added). The court pointed out that Appellant's motion *in limine* "made no such request" and "further, a motion *in limine* is the improper method of obtaining this relief." ***See*** Trial Court Opinion, 4/30/19, at 9; Appellant's Motion *in Limine*, 9/6/18, at 1-2 (sole issue was whether the recorded prison telephone calls should be admitted). Nevertheless, the trial court noted that Appellant "did make a motion for judgment of acquittal at the close of the Commonwealth's case in chief," and thus construed Appellant's claim as a challenge to the sufficiency of the evidence. ***See*** Trial Court Opinion, 4/30/19, at 9-10.

Appellant does not address the trial court's discussion of this issue in his brief. Although the heading of his argument reads: "The evidence was insufficient as a matter of law to convict Appellant of Count 6, Intimidation of a witness or victim," Appellant makes no further reference to the sufficiency

of the evidence, but instead argues that "Count 6 must be dismissed." Appellant's Brief at 25-29. Accordingly, we consider Appellant's claim to be what he presents in his statement of questions involved and develops in his argument — *i.e.*, that the trial court erred in denying Appellant's request during trial to dismiss the intimidation charge. ***See id.*** at 5, 25-29.

As stated above, Appellant demurred and moved for dismissal of the intimidation of a witness charge following the Commonwealth's case in chief. N.T. Trial, 9/11/18, at 309-310. After the trial court denied relief, Appellant presented testimony from Officer Colahan. Accordingly, because Appellant did not rest, but presented a defense, he has not preserved the dismissal issue, and his challenge to the trial court's ruling is waived. ***See Johnson***, 192 A.3d at 1154.

In his second issue, Appellant challenges the weight of the evidence attendant to his convictions of strangulation and terroristic threats. Appellant maintains that the Commonwealth presented no evidence to corroborate Wife's testimony that he put his hands on her neck, and that the police did not document any evidence of injury. Appellant asserts Wife "only reported that [he] threatened her and put his hands on her throat **after** the police told her she could not make a stolen vehicle report against her husband." Appellant's Brief at 30 (emphasis in original).

The Commonwealth responds that this issue is waived because Appellant did not file a post-sentence motion challenging the weight of the

evidence. Commonwealth Brief at 21. We agree.

Pennsylvania Rule of Criminal Procedure 607 provides:

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "Failure to properly preserve [a weight of the evidence] claim will result in waiver, even if the trial court addresses the issue in its opinion." ***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa. Super. 2012).

Appellant has not stated that he challenged the weight of the evidence before the trial court as required by Pa.R.A.P. 2117(c)(1) and (3) ("Where . . . an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall . . . specify" the place in the record "and the manner in which the questions sought to be reviewed were raised," as well as "[t]he way in which they were passed upon by the court."). In addition, our review of the record reveals that Appellant did not orally challenge the weight of the evidence following the jury's verdict or file a post-trial motion. ***See, e.g.,*** N.T. Trial, 9/11/18, at 400-402 (no challenge by Appellant after jury rendered the verdict). The certified record does not include the sentencing transcript, and the trial docket indicates that Appellant did not request it. Thus, we are unable to review whether Appellant raised an oral challenge at

the sentencing hearing. *See* Pa.R.Crim.P. 607(A)(1). Accordingly, we agree with the Commonwealth that the issue is waived. *See* Pa.R.Crim.P. 607(A)(1)-(3); *Lofton*, 57 A.3d at 1273.

Finally, Appellant claims the trial court erred in denying his motion to sever the two intimidation of a witness charges[4] from the strangulation, simple assault and terroristic threat charges. In support, Appellant contends: (1) "[t]here was a substantial break" between the attacks at the home and the telephone calls, which were made at the prison "almost 24 hours after the start of the loud argument"; (2) evidence of the telephone calls was neither necessary nor admissible at the trial on the initial charges, where the two events "were separated by time and space"; and (3) evidence of the telephone

_____

[4] Appellant was convicted under the following subsections:

> **(a) Offense defined. —** A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

> > (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

> > \* \* \*

> > (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(1), (3).

calls confused the jury, where "[t]he telephone calls were so verbally abusive that a jury was give[n] no choice but to conclude that Appellant was also physically assaultive." Appellant's Brief at 22-23. Appellant asserts that he was prejudiced by the consolidation of the charges, where Wife "was repeatedly and successfully impeached," but that impeachment "was swallowed whole by the admission of Appellant's telephone calls." *Id.* at 24. We disagree.

We review a trial court's decision to join or sever indictments for abuse of discretion. *Commonwealth v. Brookins*, 10 A.3d 1251, 1255 (Pa. Super. 2010). "The court may order separate trials of offenses . . . or provide other appropriate relief, if it appears that any party may be prejudiced by offenses . . . being tried together." Pa.R.Crim.P. 583. "The critical consideration is whether [the] appellant was prejudiced by the trial court's decision. . . . [The a]ppellant bears the burden of establishing such prejudice." *Brookins*, 10 A.3d at 1255 (citation omitted).

> Where the defendant moves to sever offenses not based on the same act or transaction . . . the court must . . . determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.
>
> \* \* \*
>
> "Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or

propensity to commit crime." **See** Pa.R.E. 404(b)(1) . . . . Nevertheless:

> [E]vidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

**Brookins**, 10 A.3d at 1256 (some citations omitted).

Here, as to the first prong, the trial court found that the evidence "for the assaultive charges for the incident on September 30th, 2017 would be admissible in a trial for the intimidation charges, as [Appellant] was trying to intimidate [Wife] from reporting information and testifying about the incident on September 30th, 2017." Trial Court Opinion, 4/30/19, at 7-8.

With regard to the second prong, the trial court determined:

> [T]he jury could reasonabl[y] separate the evidence to avoid confusion. [T]he interactions between [Appellant and Wife] for the intimidation counts versus the assaultive counts occurred on separate days and in separate locations, and further, one interaction was in person face to face, and the other was over the phone[.] There is no risk of confusing the two incidents.

**Id.** at 8.

Finally, the court found "it is clear [Appellant] would not be prejudiced by the consolidation," and "[t]he jury could reasonably separate and avoid cumulating the evidence as it is from two distinct events[.]" **Id.** The trial court reasoned:

> [S]everance was not necessary for the charges in [Appellant's] case as his conduct in all counts was part of one continuous abusive and assaultive interaction with [Wife]. These events all occurred within a 48 hour period and all concerned [Appellant] exercising abusive power and dominance over his spouse, without a clean break, to make her comply with his demands. His recorded telephone conversations with [Wife] were so intrinsically intertwined with his actions on the night of September 30th, 2017, that there was no separation in time or occurrence that created prejudice in having the jury hear the evidence together. To have artificially severed this continuous course of events would, in fact, have prejudiced the Commonwealth, as the threatening and assaultive behavior at [Wife]'s home provided the motive for [Appellant] to engage in witness tampering and intimidation from jail in order to avoid accountability.

Trial Court Opinion, 4/30/19, at 9. Upon review, we discern no abuse of discretion by the trial court in denying Appellant's motion to sever the charges. *See Brookins*, 10 A.3d at 1255-1256.

In sum, Appellant's first two claims are waived, and his third claim does not merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2019

- 13 -